# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>GRISELDA NEGRETE ZARATE,<br><br>Defendant. | Case No. 2:19-cr-00152-JAD-NJK<br><br>ORDER AND<br>REPORT AND RECOMMENDATION<br><br>(Docket Nos. 37, 44) |

This matter was referred to the undersigned Magistrate Judge on Defendant Griselda Negrete Zarate's motion to dismiss indictment. Docket Nos. 37 (original motion), 44 (amended motion). The Court has considered Defendant's amended motion and the United States' response. Docket Nos. 44, 45.[1] No reply was filed. *See* Docket.

## I.  BACKGROUND

On May 17, 2019, a criminal complaint was filed, charging Defendant Griselda Negrete Zarate with one count of conspiracy to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), (b)(1)(A)(viii); and one count of distribution of a controlled substance, in violation of Title 21 United States Code, Sections 841(a)(1) and (b)(1)(B)(viii). Docket No. 1.

On that same date, Defendant appeared before the Court for her initial appearance and detention hearing. Docket No. 5. The Court appointed counsel for Defendant. Docket No. 12.

---

[1] As Defendant's amended motion supersedes Defendant's original motion, the Court **DENIES** Defendant's original motion, Docket No. 37, as moot.

The Court further ordered Defendant released pending trial with certain conditions. Docket No. 13.

Although this Court released Defendant on the instant case, she was subsequently detained by Immigration and Customs Enforcement ("ICE"). Docket No. 40 at 5.[2] On May 28, 2019, Defendant appeared for a detention hearing before an Immigration Judge ("IJ"). *Id*. After the hearing, which included Defendant presenting evidence on her own behalf through affidavits and letters, the IJ found Defendant a danger to the community and denied her request for bond. *Id*. at 5-6. Defendant has since remained in ICE custody. *Id*. at 6.

On June 18, 2019, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with one count of conspiracy to distribute a controlled substance - methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), (b)(1)(A)(viii); one count of distribution of a controlled substance – methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii) and Title 18 United States Code, Section 2; and one count of possession of a controlled substance with intent to distribute – cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(ii)(II) and Title 18, United States Code, Section 2. Docket No. 22. Defendant's arraignment and plea on the indictment was set for June 26, 2019. Docket No. 25.

On June 26, 2019, Defendant was not present in court for her arraignment and plea. Docket No. 28. Her attorney informed the Court that she was in custody on an immigration hold, and the arraignment and plea was continued to July 2, 2019. *Id*. On July 2, 2019, Defendant was again not present for her arraignment and plea. Docket No. 33. After hearing representations from the

---

[2] The pagination in Defendant's brief differs from that in CM/ECF. The Court's citations herein are to the CM/ECF pagination.

parties, United States Magistrate Judge Cam Ferenbach continued the arraignment and plea to July 16, 2019 and ordered the United States to produce both Defendant and the person in charge of Immigration and Customs Enforcement in Las Vegas on that date. *Id*. On July 16, 2019, Defendant was present in court and the arraignment and plea proceeded. Docket No. 40. Judge Ferenbach also heard representations from counsel regarding "attorney/client access as it pertains to an ICE detainer." *Id*.

In her motion to dismiss the indictment, Defendant submits that, after she was transferred to ICE custody from DOJ custody, her counsel in her criminal case was not allowed to schedule meetings with her. Docket No. 44 at 6. Defendant further submits that the government's actions caused her to miss scheduled court hearings. *Id*. Defendant submits that her detention by ICE, after having been released by this Court on the instant case, violates the Bail Reform Act, as well as her Fifth and Sixth Amendment rights. *Id*. at 7. Specifically, Defendant submits that, since she was ordered released on the instant case, she cannot be detained on her immigration case. *Id*. at 7-11. Further, Defendant submits that she will need to testify about the instant case in her immigration hearing which, she submits, will violate her Fifth Amendment right against self-incrimination. *Id*. at 11-13. Defendant also submits that the United States violated her Sixth Amendment right to counsel by making her unavailable to her counsel. *Id*. at 13-14. Finally, Defendant submits that cases to the contrary are not persuasive, as one case in this District relied on cooperation that, at the time, existed between the United States Attorney's Office and ICE. *Id*. at 14-17. Therefore, Defendant asks the Court to grant her motion and dismiss the indictment against her with prejudice. *Id*. at 17.

In response, the United States submits that the Bail Reform Act "does not prevent other agencies from acting pursuant to their lawful duties to detain noncitizens pending removal …"

Docket No. 45 at 1.  The United States submits that, although the Ninth Circuit has not addressed the issue, the Circuits that have addressed it have found that ICE can detain a defendant even when that defendant was released on his or her criminal case under the Bail Reform Act.  *Id*. at 4-5. Further, the United States submits that Defendant's Fifth Amendment claim is not ripe for judicial review and her Sixth Amendment claim is moot.  *Id*. at 1-2, 13-18.  The United States submits that, after Defendant was detained by an Immigration Judge, she was housed in the Southern Nevada Detention Center, but in a different section than where criminal defendants are housed.[3]  *Id*. at 3. As a result, the assigned Assistant United States Attorney ("AUSA") was unaware that a summons was inadequate for Defendant to be brought to court for hearings, which is why she was not brought in for two hearings.  *Id*. at 2.  The United States submits that, since the AUSA realized that she needed to request a writ for Defendant, she has done so for each hearing and Defendant has been brought into court for each hearing.  *Id*. at 3-4.  Further, the United States submits that she first became aware that Defendant's counsel was denied the right to visit her on June 26, 2019, at Defendant's arraignment.  *Id*. at 3.  Immediately after the hearing, the United States submits, the AUSA contacted the ERO at the detention facility and learned that it had issued a revised memorandum of understanding, which changed its policy to allow criminal defense counsel access to their clients who are detained in the ERO.  *Id*.  The United States therefore asks the Court to deny Defendant's motion to dismiss her indictment.  *Id*. at 18.

On September 13, 2019, the Court held a hearing on this motion.  Docket No. 60.  At that hearing, the Court heard from the AUSA on the case, as well as Defendant's criminal attorney and immigration attorney.  *Id*.  Defendant's criminal attorney represented that he has not had any

---

[3]   Defendant is housed in the Enforcement and Removal Operations ("ERO") section of the Southern Nevada Detention Center.  *Id*. at 3.

trouble visiting her since the AUSA contacted the ERO. *Id.* Additionally, the AUSA represented that the United States will not use any statement that Defendant makes in immigration court in its case-in-chief. *Id.*

## II. ANALYSIS

In *United States v. Russell*, 411 U.S. 423, 431–32 (1973), the Supreme Court held that outrageous government conduct occurs when the actions of law enforcement officers are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." A dismissal of an indictment for outrageous government conduct is rooted in the due process clause of the Fifth Amendment of the Constitution which provides, "no person shall ... be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.

The Ninth Circuit has held that dismissal of an indictment for outrageous government conduct is "limited to extreme cases" in which the defendant can demonstrate that the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011). This is an "extremely high standard." *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (citing *United States v. Garza–Juarez*, 992 F.2d 896, 904 (9th Cir. 1993)).

Because there is no bright line rule establishing when law enforcement's conduct goes from acceptable to outrageous, each case must be resolved on its own facts, considering the totality of the circumstances. *Black*, 733 F.3d at 302, 304.

Defendant first argues that the Court should dismiss her indictment because her immigration detention violates her right to pretrial release under the Bail Reform Act. While the Ninth Circuit has not directly addressed this question of law, other appellate courts have held that

5

release under the Bail Reform Act does not preclude immigration detention. *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018); *United States v. Vasquez-Benitez*, 919 F.3d 546, 553–54 (D.C. Cir. 2019). This Court agrees and finds that ICE can fulfill its statutory duties regarding Defendant's immigration case without impairing the Court's ability to ensure that she appears at her judicial proceedings. Indeed, Defendant has appeared at every proceeding since the AUSA determined that a writ is necessary to secure her appearance. The Court finds that the short period of time during which Defendant was not brought to court does not constitute outrageous government misconduct for the purpose of dismissal.

Further, the Court finds that Defendant's potential testimony at her immigration hearing does not violate her Fifth Amendment right against self-incrimination. Although the Court does not know what Defendant's testimony will be, the issue is moot as the United States has agreed not to use any of her testimony in its case-in-chief.

Further, the Court finds that the short period during which Defendant's criminal attorney could not visit her, while not ideal, does not violate her Sixth Amendment right to counsel. As soon as the AUSA learned of the issue, she contacted the ERO and the problem was solved. Defendant's attorney has not had trouble visiting her since that time. The Court finds that that period of time does not amount to conduct so grossly shocking and outrageous as to violate the universal sense of justice. Additionally, this issue is moot as it has been fixed.

### III.  ORDER AND RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

**IT IS ORDERED** that Defendant's original motion to dismiss the indictment, Docket No. 37, is **DENIED** as moot.

**IT IS RECOMMENDED** that Defendant's amended motion to dismiss the indictment, Docket No. 44, be **DENIED**.

DATED: October 11, 2019.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).