# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:19-cr-00152-JAD-NJK |
| Plaintiff | |
| v. | **Order Adopting Report and Recommendation and Denying Motion to Dismiss Indictment** |
| Griselda Negrete Zarate, | |
| Defendant | [ECF Nos. 44, 61] |

Defendant Griselda Negrete Zarate was charged by complaint with three drug-related offenses and released pending trial on a personal-recognizance bond with certain conditions.[1] The day she was released, and because she is not a United States citizen, Immigration and Customs Enforcement (ICE) placed her in its custody pending removal proceedings.[2] The grand jury later returned an indictment charging Zarate with conspiracy to distribute a controlled substance, distribution of a controlled substance, and possession of controlled substance.[3] Zarate moves to dismiss that indictment, arguing that: (1) her immigration detention violates the Bail Reform Act (BRA), (2) it is a violation of the Fifth Amendment's self-incrimination clause for her to testify before the immigration judge about her criminal case in support of her application for cancellation of removal, (3) and the government violated her Sixth Amendment right to counsel because her defense counsel was unable to contact her for a short period at the

---

[1] ECF Nos. 1 (complaint), 5 (minutes).

[2] ECF No. 45 at 2–3 (government's response to motion to dismiss).

[3] ECF No. 22 (indictment); *see also* 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii), and 841(b)(1)(B)(ii)(II).

Enforcement and Removal Operations (ERO) section of the Southern Nevada Detention Center (SNDC).

Magistrate Judge Koppe recommends that I deny Zarate's amended motion to dismiss the indictment[4] because "release under the Bail Reform Act does not preclude immigration detention."[5] Judge Koppe found that, despite the two instances when Zarate was in ICE custody and did not appear in court, her absences were not caused by "outrageous government misconduct."[6] Judge Koppe further determined that Zarate's potential testimony at her immigration hearing does not violate her Fifth Amendment right against self-incrimination and, based on the government's agreement that it will not use such testimony, the issue is moot.[7] Judge Koppe also concluded that the short period that Zarate's defense counsel was unable to visit her at the ERO does not rise to a level of "outrageous conduct" that would warrant dismissal of the indictment;[8] the issue is also now moot because the government reached out to the ERO and it obtained a policy change that allowed Zarate's defense counsel to visit her.[9]

Having considered Zarate's objections de novo, I find that dismissal of the indictment is unwarranted in this case. Zarate has not invoked her right under the Fifth Amendment's self-incrimination clause, so that issue is unripe for review. Her Sixth Amendment right-to-counsel argument fails because the appropriate remedy for such a violation is suppression or a new trial,

---

[4] Magistrate Judge Koppe denied as moot the original motion to dismiss because the amended motion supersedes the original motion. ECF No. 61 at 1 n.1 (report and recommendation).

[5] *Id*. at 6 (citing *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018); *United States v. Vasquez-Benitez*, 919 F.3d 546, 553–54 (D.C. Cir. 2019)).

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*.

and neither is appropriate here. Accordingly, I overrule Zarate's objections, adopt the magistrate judge's Order and Report and Recommendation (R&R) in full, and deny Zarate's amended motion to dismiss the indictment.

**Background**

After she was released on a personal recognizance bond, detained by ICE, and indicted, Zarate twice missed her arraignment date.[10] The government discovered that it erred in believing a summons, rather than a writ of habeas corpus ad prosequendum, would cause ICE to release her to the United States Marshals for her court appearance.[11] Zarate's defense counsel advised the court that ICE also denied him visitation with Zarate while she was housed at the ERO.[12] Once it learned of these issues, the government contacted ERO about defense counsel's visitation privileges, and the ERO issued a memorandum of understanding allowing criminal defense counsel to visit their clients at ERO.[13] The government also filed the appropriate writ petition,[14] allowing Zarate to be present at the continued arraignment hearing where she entered a not guilty plea.[15]

Before Zarate appeared for her arraignment, however, defense counsel filed a motion to dismiss and an amended motion to dismiss the indictment, raising arguments under the BRA and violations of the Fifth and Sixth Amendments. She argues that it is a violation of the BRA and her Fifth and Sixth Amendment rights for ICE to detain her after this court had released her on a

---

[10] ECF No. 61 at 1–3.
[11] ECF No. 45 at 3.
[12] ECF No. 44 at 2.
[13] ECF No. 45 at 3.
[14] ECF Nos. 34 (petition for writ), 35 (order granting writ), and 36 (writ of habeas corpus).
[15] ECF No. 40 (minutes).

3

personal-recognizance bond.[16] She also argued that it would violate her Fifth Amendment right against self-incrimination to testify in support of her application for cancellation of removal because she will have to testify about the pending charges and the facts underlying her criminal case to allow the immigration judge to determine whether she has good moral character.[17] This is particularly problematic, she argues, because if she invoked her Fifth Amendment right, the immigration judge would likely draw an adverse inference from her silence, which would preclude her from having a "meaningful and fair opportunity to request relief through cancellation of removal."[18] Additionally, she argues that the government violated her Sixth Amendment right to counsel because NSDC did not allow her criminal defense attorney direct access because she was housed in the ERO where only her immigration attorney could visit—her defense counsel had to schedule appointments and access by telephone was unreliable.[19] Relying on the District of Oregon's decision in *United States v. Trujillo-Alvarez*,[20] Zarate argues that her ICE detention jeopardizes her criminal case in violation of the BRA, and the remedy for that violation is for this court to either dismiss the criminal case or order her released from ICE custody.[21]

---

[16] ECF No. 44 at 6–11 (motion to dismiss indictment).
[17] *Id*. at 8.
[18] *Id*. at 8–9.
[19] ECF No. 44 at 9–10.
[20] *United States v. Trujillo-Alvarez*, 900 F.Supp. 2d 1167, 1178 (D. Or. 2012).
[21] ECF No. 44 at 5–7.

4

**Discussion**

**A.     Specific-objection standard**

A district court reviews objections to a magistrate judge's proposed findings and recommendations de novo.[22]  "[R]eview de novo means that the court should make an independent determination of the issues and should not give any special weight to the prior determination of the [magistrate judge]."[23]  "Normally, the judge . . . will consider the record which has been developed before the magistrate and make [her] own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate."[24]  "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[25]

Additionally, "no review is required of a magistrate judge's report and recommendation unless objections are filed."[26]  Zarate seems to have abandoned her argument that her detention at the ERO violates her release in her criminal case under the BRA.  She challenges only the conclusions pertaining to the alleged violations under the Fifth and Sixth Amendments, so I address only those objections.

**B.     Zarate's Fifth Amendment injury is speculative.**

Magistrate Judge Koppe concluded that the fact that Zarate may testify at her immigration hearing does not violate her Fifth Amendment right against self-incrimination and,

---

[22] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

[23] *United States v. Raddatz*, 447 U.S. 667, 690 (1980) (quoting *United States v. First City National Bank*, 386 U.S. 361, 368 (1967) (internal quotations and ellipses omitted)).

[24] *Id.* at 675.

[25] *Reyna-Tapia*, 328 F.3d at 1121–22.

[26] *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

in any event, the issue was mooted by the government's agreement that it would not use such testimony in its case-in-chief.[27] Zarate objects to those conclusions, arguing that the issue is not moot because she "will effectively be compelled to testify at her immigration proceeding" and the government will be free to change its mind about using those statements since it has not offered Zarate immunity or provided another binding commitment to that effect.[28] The government responds that no Fifth Amendment violation exists; Zarate has yet to testify and she is free to invoke her right to remain silent at that time.[29] Thus, it argues, this court should not rule prospectively.[30]

The Fifth Amendment's self-incrimination clause protects a person from being "compelled in any criminal case to be a witness against himself."[31] "To assert this privilege against self-incrimination, as an initial matter, a witness'[s] fear of conviction on the basis of [her] testimony must be reasonable, real, and appreciable."[32] "The witness must face a 'real danger' of conviction to invoke the privilege because the privilege does not protect against 'remote and speculative possibilities.'"[33] Although the Fifth Amendment does not apply to civil proceedings, like immigration proceedings, "an alien may assert [her F]ifth [A]mendment right to refuse to answer questions in a deportation hearing if the answers would incriminate [her] on a criminal matter[. Her] refusal to testify may form the basis of inferences against him in the

---

[27] ECF No. 61 at 6.

[28] ECF No. 62 at 5 (objections to R&R).

[29] ECF No. 63 at 3 (government's response to objections).

[30] *Id*.

[31] U.S. Const. amend. V, cl. 2.

[32] *United States v. Gecas*, 120 F.3d 1419, 1424 (11th Cir. 1997) (citing *Brown v. Walker*, 161 U.S. 591, 599 (1896)).

[33] *Id*. (citing *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472 (1972)).

deportation proceeding."[34] If the alien chooses to testify, the noncriminal deportation proceeding could become criminal for purposes of the self-incrimination clause, "as long as the testimony sought from the witness "might tend to subject to criminal responsibility [she] who gives it."[35] But there is no violation of the self-incrimination clause until the compelled testimony is used.[36]

Zarate's Fifth Amendment claim is premature for two reasons: she has not invoked her right in any proceeding, and no statement has been compelled or used at trial. It appears that Zarate's removal-proceeding hearing was scheduled for August 20, 2019,[37] and it is unclear whether she has had a separate hearing for her cancellation of removal during which her Fifth Amendment right may potentially be implicated. While Zarate argues that such testimony would be effectively compelled, no compelled testimony has been used. Thus, Zarate has suffered no Fifth Amendment violation. Her injury is speculative, and she has not shown that dismissal of the indictment is warranted in this case.

**C. Even if the government had violated Zarate's Sixth Amendment right to counsel, the remedy would not be dismissal of the indictment.**

Magistrate Judge Koppe concluded "that the short period during which [Zarate's] criminal attorney could not visit her, while not ideal, [did] not violate her Sixth Amendment right

---

[34] *United States v. Alderete-Deras*, 743 F.2d 645, 647 (9th Cir. 1984) (internal quotation marks omitted); *see also Gecas*, 120 F.3d at 1427–28 ("A deportation hearing itself is a civil proceeding, not a criminal proceeding.").

[35] *Gecas*, 120 F.3d at 1427–28 (internal quotation marks omitted).

[36] *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (providing that a statement compelled during police interrogation was not a violation until it was used at trial); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial" (citations omitted)).

[37] ECF No. 44 at 8.

to counsel."[38] And because the AUSA promptly contacted the ERO to rectify the issue once the AUSA became aware of the issue, and Zarate's defense counsel did not have a problem contacting her thereafter, Judge Koppe determined that the issue was moot.[39] Zarate objects on the grounds that the right-to-counsel issue is not moot under the voluntary-cessation doctrine and because the AUSA failed to attach evidence of the policy change allowing Zarate's defense counsel to visit with her at the ERO.[40] Zarate seeks dismissal of the indictment against her for this alleged Sixth Amendment violation,[41] and the government responds that the requested relief is not appropriate, given the "short period" that her defense counsel was denied access.[42]

As the United States Supreme Court explained in *United States v. Morrison*, the remedy for a violation of a defendant's Sixth Amendment's right to counsel "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[43] The remedy is usually a new trial or suppression of evidence, depending on when the violation occurred during the life of the case.[44] But, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate."[45]

Zarate does not even approach "demonstrable prejudice" from the short period that her counsel was unable to meet with her. If there was a violation, it has since been cured. There is

---

[38] ECF No. 61 at 6.
[39] *Id.*
[40] ECF No. 62 at 6–7.
[41] ECF Nos. 44, 62.
[42] ECF No. 63.
[43] *United States v. Morrison*, 449 U.S. 361, 364 (1981).
[44] *Id.* at 364.
[45] *Id.* at 365.

no evidence to suppress and no trial to order anew. Because her requested relief is legally improper and she hasn't shown a basis to dismiss the indictment, I overrule her objection.

**Conclusion**

Having reviewed the R&R and considered Zarate's objections de novo, I find good cause to adopt the R&R, and I do. Accordingly, IT IS HEREBY ORDERED that the magistrate judge's R&R **[ECF No. 61] is ADOPTED** in full;

IT IS FURTHER ORDERED THAT the motion to dismiss the original indictment **[ECF No. 44] is DENIED**.

Dated: December 2, 2019

_____
U.S. District Judge Jennifer A. Dorsey